Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| S&Y5, INCORPORATED and YEO PEYONG YUN,<br><br>*Plaintiffs*,<br><br>v.<br><br>SANG EUN LEE,<br><br>*Defendant*. | Civil Action No. 14-5911<br><br>**OPINION** |

### John Michael Vazquez, U.S.D.J.

This matter comes before the Court by way of the Motion to Dismiss filed by Defendant Sang Eun Lee. D.E. 34. Plaintiffs S&Y5, Incorporated ("S&Y5") and Yeo Peyong Yun (collectively "Plaintiffs") filed a brief in opposition, D.E. 35, to which Defendant filed a brief in reply, D.E. 36. The Court reviewed all submissions in support and opposition, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

### I.     BACKGROUND[1]

Temptation S&Y Atlanta, Inc. ("Temptation") operates a "high end costume jewelry" store at the Peachtree Mall in Atlanta, Georgia (the "Peachtree Mall store"). Compl. ¶¶ 8, 42. S&Y5 and Lee each own fifty percent of Temptation's issued shares, and Yun is the sole shareholder of S&Y5. *Id.* ¶¶ 1, 3. Yun is also the "developer and owner" of the Temptation trademark, which is

---

[1] The factual background is taken from Plaintiffs' Complaint. D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

1

used in connection with the Peachtree Mall store. The Complaint allege that S&Y5 was provided with "a limited use license" to operate the store "under the trade name of Temptation." *Id.* ¶ 4.

Yun allegedly incorporated Temptation, set up the Peachtree Mall store, and brought Lee into the business as the location manager. In doing so, S&Y5 and Lee signed a Business Shareholder Agreement (the "Shareholder Agreement"), which indicates that New Jersey law applies to the agreement and its interpretation.[2] *Id.* ¶¶ 8-9. As set forth in the Shareholder Agreement, Lee was responsible for daily operations, bookkeeping, accounting, and shareholder distributions. *Id.* ¶¶ 9-10, Ex. 1. Plaintiffs, however, allege that since the inception of the business arrangement, Lee failed to account for "revenue, expenses, profits, disbursements, [and] wages," and failed to "provide [P]laintiffs with accurate, reliable information about profits and distribution of income." *Id.* ¶ 11. Specifically, Plaintiffs state that Lee provided monthly sales reports that omitted revenue, improperly hired family members, took an improper salary, created fraudulent store merchandise returns, and was not present as required. *Id.* ¶¶ 11-12, 14.

Plaintiffs also allege that Lee purchased products that infringed upon third parties' intellectual property rights, and then sold the products at the Peachtree Mall store. *Id.* ¶ 14. In fact, S&Y5 received a notice of default letter from Simon Property Group, Inc., Peachtree Mall's managing agent, stating that "it has been brought to the Landlord's attention that [Temptation] is selling merchandise that infringes upon trademarked or copyrighted product of a third party." *Id.* Ex. 4 at 1. The letter noted that this conduct constituted a breach and default under the lease. *Id.* Plaintiffs allege that this conduct tarnished the Temptation name. In addition, Plaintiffs assert that creating a negative relationship at one mall "is likely to cause a direct, immediate, palpable adverse

---

[2] Specifically, the Shareholder Agreement provides that "New Jersey law should govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties of the parties." Compl. Ex. 1 at 5.

2

impact at other [Temptation] locations" because shopping malls across the company are operated by only a handful of companies. *Id.* ¶ 17.

On April 18, 2014, Plaintiffs' attorney sent Lee a letter demanding his immediate withdrawal from daily operations at the Peachtree Mall store. The letter stated that Lee breached his fiduciary duties, "placed the company in danger of irreparable harm," and is "tarnishing the Temptation trade name." *Id.* ¶ 19. The letter stated that Temptation hired a substitute location manager to take over daily operations, and explained that if Lee did not agree with the demanded departure, Temptation would seek judicial intervention. *Id.* Lee refused to comply with the demand. *Id.* ¶ 20.

Plaintiffs filed their Complaint in the Superior Court of New Jersey on September 5, 2014.[3] *See* Notice of Removal ¶ 15, D.E. 1. Plaintiffs' Complaint asserts claims for (1) breach of contract, (2) tortious interference with contract, (3) tortious interference with prospective advantage, (4) breach of fiduciary duty, (5) accounting, (6) oppressed minority shareholder rights, and (7) a Lanham Act violation. Lee removed the matter on September 23, 2014, alleging that the Court has both diversity jurisdiction, pursuant to 28 U.S.C. § 1332, and federal subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, due to Plaintiffs' Lanham Act claim. *Id.* ¶¶ 22-27. Plaintiffs filed a Motion to Remand based on the doctrine of judicial estoppel, D.E. 4, but it was withdrawn on December 22, 2014. On December 24, 2014, Lee filed a Motion to Dismiss. D.E. 8. The motion, however, was terminated while the parties attempted to resolve the matter through mediation. D.E. 13. After mediation was unsuccessful, Lee refiled his Motion to Dismiss on April 22, 2016. D.E. 34.

---

[3] It appears that Temptation previously brought suit against Lee in the District of New Jersey in January 2014. Notice of Removal ¶ 1, D.E. 1. Temptation voluntarily withdrew the complaint due to jurisdictional issues and filed this Complaint shortly after. Notice of Removal ¶¶ 13-15.

3

Through his motion, Lee argues that the Complaint should be dismissed in its entirety because this is derivative shareholder matter and Plaintiffs failed to comply with the relevant statutory notice provision. Def's Br. at 2-3. Lee also contends that Yun should be dismissed as a Plaintiff because only shareholders can bring derivative suits. Because Yun is not a Temptation shareholder, Lee maintains that Yun lacks standing. *Id.* at 4. In the alternative, Lee argues that four counts of the Complaint, both tortious interference claims, the oppressed minority shareholder claim, and the Lanham Act claim, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs fail to state claims upon which relief can be granted. *Id.* at 5-10.

Plaintiffs counter that an April 3, 2014 letter to Lee constitutes written notice even though it was sent to Lee individually rather than to Temptation. In the alternative, Plaintiffs assert that the Court should treat this as a direct action and disregard the statutory requirements for derivative claims because Temptation is a closely held corporation. Plfs' Br. at 11-16. Plaintiffs also contend that as the sole shareholder of S&Y5, Yun has standing to bring suit as a beneficial owner. *Id.* at 17. Finally, Plaintiffs argue that the four claims at issue are sufficiently pled under Rule 12(b)(6). *Id.* at 17-21.

## II. LEGAL STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and

4

legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

## III. ANALYSIS

### A. Rule 12(b)(6) Dismissal of Individual Claims

Lee argues that four counts should be dismissed because they are inadequately pled under Rule 12(b)(6). The Court will address the sufficiency of these claims first.

#### 1. Counts Two and Three - Tortious Interference with a Contract and with a Prospective Economic Advantage

The parties disagree as to whether Plaintiffs can bring tortious interference claims against Lee because he is a party to the Shareholder Agreement. Lee contends that Counts Two and Three must be dismissed because claims for tortious inference must address interference by someone who is not a party to the contract or economic advantage at issue. Def's Br. at 5-7; Def's Reply at 4-5. Plaintiffs argue that a third party's actions are not always required. Plfs' Br. at 17-18. Plaintiffs further note that while Yun is not a direct party to the contract, Lee is interfering with the contractual rights of S&Y5, which is Yun's entity. *Id.* at 18.

To state a claim for tortious inference with a contract under New Jersey law, a plaintiff must demonstrate (1) actual interference with a contract; (2) "that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *214 Corp. v. Casino Reinvestment Dev. Auth.*, 280 N.J. Super. 624, 628 (Super. Ct. Law Div. 1994) (citing *Norwood Easthill Assoc. v. N.E. Watch*, 222 N.J. Super. 378 (App. Div. 1988)). A claim for tortious inference cannot survive if it is premised on a defendant's interference with his own contract. *See Emerson Radio Corp. v.*

5

*Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001) ("A cause of action for tortious interference with a contract cannot be directed against a defendant who is a party to the contract.") (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752-53 (1989)). Here, Plaintiffs allege that Lee interfered with the Shareholder Agreement, a contract to which he is a party. Consequently, Plaintiffs' tortious interference with a contract claim cannot survive as a matter of law. As a result, the Motion to Dismiss as to Count Two is granted and Count Two is dismissed with prejudice.

Count Three fails for similar reasons. "[I]t is fundamental to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Printing Mart-Morristown*, 116 N.J. at 752 (internal quotation marks omitted). At least one court, however, has suggested that this cause of action "may also be established by showing conduct not necessarily directed at the third party, but which improperly impinged upon the claimant's reasonably expected advantage from or with regard to that third party." *Central Paper Distribution Servs. v. Int'l Records Storage & Retrieval Serv., Inc.*, 325 N.J. Super. 225, 233 (App. Div. 1999). The court in *Central Paper* recognized that such a claim may exist "if there are proofs that defendants acted in ways which would not constitute a breach of contract and served unreasonably to deprive plaintiffs of economic benefits they had a right to expect." *Id.* at 234. As currently pled, Count Three is essentially a claim for breach of contract. Plaintiffs fail to plead plausible facts demonstrating that Lee's conduct deprived them of an expected benefit from a third party or that is distinct from a benefit provided by the Shareholder Agreement. As a result, this claim will be dismissed. But in light of *Central Paper*, Count Three will be dismissed without prejudice and the claim may be pled in a manner that is consistent with *Central Paper*.

6

### 2. Count Six - Oppressed Minority Shareholder Rights

Lee argues that this claim must be dismissed because Plaintiffs fail to establish that they are actually minority shareholders. Lee also contends that Plaintiffs "did not allege any facts in their complaint that would rise to the level of 'oppression'" under the statute. Def's Br. at 7-8.

N.J.S.A. 14A:12-7 governs the rights of oppressed minority shareholders and "is interpreted broadly to provide remedies for the distinctive problems of close corporations." *Brenner v. Berkowitz*, 134 N.J. 488, 508 (1993). The act authorizes a court to consider various equitable remedies, including dissolution of the corporation or ordering a stock sale, under the following circumstances:

> In the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholder in their capacities as shareholders, directors, officers, or employees.

N.J.S.A. 14A:12-7(1)(c). Thus, the act prevents fraudulent, illegal, or oppressive conduct, which is defined as conduct that "frustrate[es] a shareholder's reasonable expectations." *Brenner*, 134 N.J. at 506. In addition to establishing misconduct, a shareholder must establish that there is "a nexus between the harm and the minority shareholder's interest in or expectation in the company." *Id.* at 510. "In determining whether such a nexus exists the Court must consider those acts that affect a shareholder's stock interest, as well as those that are specifically targeted to the shareholder." *Food King, Inc. v. Norkus Enters., Inc.*, No. 04-1500, 2008 WL 3843719, at *16 (D.N.J. Aug. 15, 2008) (citing *Brenner*, 134 N.J. at 508). Finally, "[c]ases involving N.J.S.A. 14A:12-7(1)(c) are very fact sensitive, and thus any hard and fast rules are difficult to formulate." *Brenner*, 134 N.J. at 516.

7

The term "minority shareholder" is leniently construed to include "any shareholder, regardless of his percentage of ownership interest . . . [who] does not have control of the corporate shares with respect to voting rights." *Berger v. Berger*, 249 N.J. Super. 305, 317 (Super. Ct. Ch. Div. 1991). In addition, a fifty percent shareholder is a minority shareholder for purposes of the statute because he "cannot direct outcomes . . . he does not have 'control' of the corporation." *Sipko v. Koger, Inc.*, 214 N.J. 364, 382 n. 7 (2013) (quoting *Balsamides v. Protameen Chems., Inc.*, 160 N.J. 352, 371 n. 7 (1999)).

As a threshold issue, the Court finds that S&Y5 has sufficiently shown that it is a minority shareholder. Temptation has just two equal shareholders, S&Y5 and Lee, Compl. ¶¶ 1, 3, and S&Y5 does not have control of Temptation through voting rights.

In addition, Plaintiffs pled plausible facts alleging that Lee engaged in oppressive conduct that frustrated S&Y5's expectation and interest in Temptation. For example, Plaintiffs allege that Lee created fraudulent store merchandise returns, diverted Temptation funds to pay himself and a salary for his wife, and failed to maintain an accurate accounting system. Compl. ¶ 14. These facts are sufficient to establish oppressive conduct under the Act. *See, e.g., Muellenberg v. Bikon Corp.*, 143 N.J. 168, 180 (1996) (stating that oppression may be shown when majority shareholders "awarded themselves excessive compensation, furnished inadequate dividends, or misapplied and wasted corporate funds"); *Kelley v. Axelsson*, 296 N.J. Super. 426, 432 (App. Div. 1997) (stating that maintaining an accounting system "whose shortcomings have the effect of substantially preventing the outside, minority shareholders from ascertaining and verifying the corporation's income would constitute unfairness and oppression toward the minority shareholders, entitling them to relief under N.J.S.A. 14A:12-7"). In addition, Plaintiffs' Complaint establishes a nexus between this oppressive conduct and S&Y5's expectation in the company. Compl. ¶ 23 (outlining

the alleged financial diversion from Temptation to Lee). Consequently, Lee's motion to dismiss as to Count Six is denied as to the underlying allegations.

Nevertheless, Lee's motion is granted as to Count Six because Plaintiffs do not appropriately plead the relief that that they are seeking. As noted by Plaintiffs, Count Six ends on an incomplete sentence. Because Count Six is not fully pled, it is unclear what relief Plaintiffs intend to seek through this claim. The Court notes that equitable relief, such as ordering a stock sale or appointing a provisional director, is the typical remedy for a violation of the Oppressed Minority Shareholder Act. N.J.S.A 14A:12-7(1). An award of monetary relief under the Act, however, "is an extraordinary remedy that should only be used in extreme circumstances." *Pedicini v. Pedicini*, 2006 WL 695509, at \*5 (N.J. Super. Ct. Ch. Div. Mar. 17, 2006); *see also Weil v. Express Container Corp.*, 360 N.J. Super. 599, 610-11 (App. Div. 2003) (concluding that the New Jersey Supreme Court's discussion of available remedies under the Act "does not support the conclusion that the oppressed minority shareholder is entitled to a remedy against the majority shareholder individually"). This count is dismissed without prejudice but can be re-pled with an appropriate request for relief.

### 3. Count Seven - Lanham Act Violation

Viewing the Complaint in a light most favorable to Plaintiffs, the Lanham Act claim appears to allege that in selling products that infringed on third parties' intellectual property rights, Lee tarnished the Temptation brand.[4] *See* Compl. ¶¶ 42-43.

---

[4] In their brief, Plaintiffs seem to argue that Lee had a license to use the Temptation mark but breached the license, such that it should be rescinded, when he sold infringing merchandise. Plfs' Br. at 20-21. Because there is only a single passing reference in the Complaint to a license (Compl. ¶ 5), and the Lanham Act claim does not mention a license, the Court will not consider this new allegation. *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (stating that the court "do[es] not consider after-the-fact allegations in determining the sufficiency of her complaint under . . . [Rule] 12(b)(6)").

9

As pled, Plaintiffs fail to state a claim under the Lanham Act. To plead a Lanham Act claim for trademark infringement or unfair competition, a plaintiff must establish that (1) it has a valid and legally protectable mark, (2) it owns the mark, and (3) "the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 405 (D.N.J. 2010) (citations omitted). A likelihood of confusion exists if "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.* (quoting *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 301 (3d Cir. 2001)). Plaintiffs allege that Lee's conduct placed their "distinctive brand rights . . . in peril." Compl. ¶ 43. At the outset, Plaintiffs fail to allege that Lee is using a different but similar trademark. Indeed, Plaintiffs do not sufficiently establish that they own a valid and legally protectable mark. Even assuming that Plaintiffs own a valid and legally protectable mark, which is not clear from the pleadings, the failure to establish that there was a likelihood of confusion is fatal Plaintiffs' claim. As a result, Lee's Motion to Dismiss as to Count Seven is granted, and this count is dismissed.

### B. Failure to Comply with N.J.S.A. 14A:3-6.3

Lee argues that the Complaint must be dismissed in its entirety because it is a derivative lawsuit and Plaintiffs failed to comply with statutory requirements for bringing a derivative suit. Specifically, Lee alleges that Plaintiffs did not adhere to N.J.S.A. 14A:3-6.3, which mandates that a shareholder make written demand upon the corporation "to take suitable action" before bringing derivative claims. N.J.S.A. 14A:3-6.3(1). Lee argues that Plaintiffs failed to make such a request. Def's Br. at 3. Plaintiffs counter that an April 3, 2014 letter to Lee was sufficient to constitute written demand, or in the alternative, that the statutory requirements should be disregarded because Temptation is a closely held corporation. Plfs' Br. at 11-15.

A derivative suit "redress[es] an injury sustained by, or enforce[s] a duty owed to, a corporation." *In re Sharkey*, 272 B.R. 574, 582 (D.N.J. 2001). In contrast, "[a] direct action may be brought in the name and right of a [share]holder to redress an injury sustained by, or enforce a duty owed to, the holder." *Id.* Ultimately, a shareholder may only maintain a direct action if he sustained a "special injury," or "an injury distinct from that suffered by other shareholders or a wrong involving one of his contractual rights as a shareholder." *Strasenburgh v. Straubmuller*, 146 N.J. 527, 551 (1996) (quoting *Lipton v. News Int'l Plc*, 514 A.2d 1075, 1078 (Del. 1986)). There is a fine line between whether a claim is derivative or direct, and often the same conduct can lead to both types of claims. *See id.* at 552-53. As a result, a court must "examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." *Id.* at 551. To do so, a court may determine "whether the corporation or the suing stockholder suffered the alleged harm" or if "the potential recovery results in a benefit to the corporation or the individual." *In re D'Amore*, 472 B.R. 679, 693 (D.N.J. 2012) (citing *Kahn v. Rusckowski*, No. A-2181-08T2, 2010 WL 269856, at *5 (N.J. Super. Ct. App. Div. July 1, 2010)).

Lee's argument that the entire Complaint asserts derivative claims is misplaced. Of the remaining counts, the breach of contract and oppressed minority shareholder claim assert direct claims against Lee. In both of these counts, S&Y5, not Temptation, suffered the alleged injury and would benefit from any recovery. Consequently, Plaintiffs did not need to make written demand before bringing these claims against Lee. Breach of fiduciary duty and accounting claims, on the other hand, are usually viewed as derivative claims. *See, e.g., Schulman v. Wolff & Samson, PC*, 401 N.J. Super. 467, 478 (App. Div. 2008) (construing minority shareholders' breach of fiduciary duty claims as derivative).

A derivative suit can only be brought by a shareholder, who must usually comply with statutorily prescribed requirements to bring claims against the corporation. *See Strasenburgh*, 146 N.J. at 550. When a derivative suit involves a closely held corporation,[5] however, a court "may treat an action raising derivative claims as a direct action, [and] exempt it from those restrictions and defenses applicable only to derivative action." *Brown v. Brown*, 323 N.J. Super. 30, 36 (App Div. 1999) (quoting American Law Institute's *Principles of Corporate Governance: Analysis and Recommendations* § 7.01 cmt. (e) (1992)). In *Brown*, for example, the court permitted the plaintiff to proceed with derivative claims against a closely held corporation, which included breach of fiduciary duty claims, "by way of a direct action." *Id.* at 39. Treating a derivative action as a direct action is appropriate if doing so would not "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *Id.*; *see also In re Sharkey*, 272 B.R. at 582-83 (ignoring procedural hurdles required to maintain a derivative action in case involving a closely held corporation). Temptation's only shareholders are both parties to this suit. As a result, S&Y5's failure to make a written demand does not unfairly expose the corporation or its shareholders to a multiplicity of actions or interfere with a fair distribution of recovery. In addition, the parties have not made the Court aware of any creditors that would be harmed by the failure to make written demand before bringing suit. As a result, the Court will allow these traditionally derivative claims to proceed as if they were direct claims. Consequently, S&Y5's failure to make written demand is not fatal and Lee's Motion to Dismiss is denied on these grounds.

### C. Lack of Standing

---

[5] Pursuant to New Jersey law, a closely held corporation has twenty-five or fewer shareholders. *Berger*, 249 N.J. Super. at 326.

12

Lee argues that Yun must be dismissed as a Plaintiff because he does not have standing. Lee contends that pursuant to N.J.S.A. 14A:3-6.2, only shareholders can bring derivative claims. Because Yun is not a Temptation shareholder, Lee maintains that Yun cannot be a party to this lawsuit. Def's Br. at 4. Plaintiffs counter that Yun has standing to bring suit because he is sole owner of S&Y5, "as such[,] he is the beneficial owner of the stock shares in dispute." Plfs' Br. at 17. Because the Court is treating the remaining claims as an individual action the requirements of N.J.S.A. 14A:3-6.2 are no longer applicable. The Court, however, will still dismiss Yun from this action. "Absent a direct individual injury, . . . the principal shareholder of a corporation lacks standing to sue for an injury to the corporation." *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012). Therefore, as S&Y5's sole shareholder, Yun lacks standing to assert claims as to S&Y5's alleged injuries.[6] As a result, Yun is dismissed as a Plaintiff from this suit.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted as to Counts Two, Three, Six, and Seven. For the foregoing reasons, Count Two is dismissed with prejudice. S&Y5 is, however, granted leave to re-plead Counts Three, Six and Seven. In addition, Yun is dismissed as a Plaintiff in this case. The remaining arguments in Defendant's motion are denied. An appropriate form of order accompanies this opinion.

Dated: December 2, 2016

John Michael Vazquez, U.S.D.J.

---

[6] Yun argues that he also has standing because he is the owner of the Temptation trademark. Plfs' Br. at 17. Because the Lanham Act claim is dismissed, this argument fails to provide the Court with a basis to keep Yun as an additional plaintiff in this matter.

13